UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BANKERS INSURANCE COMPANY,

    Plaintiff,

vs.                                                 CASE NO.: 8:13-cv-40-T-23MAP

LG ELECTRONICS USA, INC., and LG
ELECTRONICS ALABAMA, INC.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Before the Court are Defendants' Motion to Dismiss First Amended Complaint (doc. 16), Plaintiff's response thereto (doc. 20) and the parties' supplemental memoranda (docs. 39 and 44). Bankers Insurance Company ("Bankers") filed this action against LG Electronics USA, Inc. and LG Electronics Alabama, Inc. (together "LG") alleging that LG used a customs bond issued by Bankers to secure release from United States Customs and Border Protection ("Customs") of imported merchandise subject to potential antidumping duties thereby exposing Bankers to unforeseen potential claims for payment under the bond and then refused to perform contractual obligations triggered by such use of the bond. After consideration, I recommend LG's motion to dismiss first amended complaint (doc. 16) be GRANTED as to counts I, III-V. *See* Notice of Voluntary Dismissal, doc. 42; Order dismissing Count II without prejudice, doc. 43.

    *A. Statutory framework*

The United States Department of Commerce ("Commerce") is tasked with investigating dumping and countering its detrimental effects by imposing a special "antidumping" duty on such goods. 19 U.S.C. §§1673 *et seq*. The first point in an antidumping investigation is a

preliminary determination. If Commerce believes that dumping is occurring, it will suspend the liquidation of the goods, estimate the duty rates, and require a "cash deposit, bond or other security" from the importer equal to its estimated duty rate.[1] 19 U.S.C. § 1673b(d)(1)(B). Per the regulations, if Commerce's preliminary determination is affirmative (a preliminary determination that dumping has occurred) it would "normally order the posting of cash deposits to ensure payment if antidumping ... duties ultimately are imposed." *See* 19 C.F.R. 351.205(d). When liquidation of entry is suspended, Customs must provide notice of the suspension to the importer of record and to any authorized agent and surety of such importer. 19 U.S.C. § 1504(c); 19 CFR §159.12(c).

  B. *Background facts*[2]

Bankers is engaged in the business of issuing surety bonds. In April 2012, Bankers issued a continuous entry bond (the "Bond") to LG, a manufacturer and importer of home appliances. The Bond, a Customs Form 301-1 governed by 19 C.F.R. §113.62, became effective May 28, 2012, and had a limit of liability of $4,400.00. Pursuant to 19 C.F.R. §113.62(a), LG and Bankers jointly and severally agreed to

> (i) Deposit, within the time prescribed by law or regulation, any duties, taxes, and charges imposed, or estimated to be due, at the time of release or withdrawal [of imported merchandise]; and
> (ii) Pay, as demanded by Customs, all additional duties, taxes, and charges subsequently found due, legally fixed, and imposed on any entry secured by this

---

[1] "Liquidation" is the final computation or assessment of duties on an entry of imported merchandise. 19 C.F.R. §159.1.

[2] These facts are based primarily on Plaintiff's amended complaint. (Doc. 10, Am. Compl.); *see Beck v. Deloitte & Touche*, 144 F.3d 732, 735 (11th Cir. 1998) ("In evaluating the sufficiency of a complaint, a court must accept the well pleaded facts as true and resolve them in the light most favorable to the plaintiff.")

bond.

Essentially, if LG failed to pay, Customs could make a claim against Bankers, as surety, for unpaid duties on entries secured by the Bond. Because LG represented to Bankers that the Bond would not be used to cover merchandise subject to antidumping duties, Bankers charged LG a rate of $3.00 per thousand of the bond amount for a total aggregate premium of $13,200.00 per year or $39,600.00 for a three year period. During negotiations, Bankers informed LG that if they used the CF 301-1 continuous bond on any entries subject to antidumping duties, the rate would be $25.00 per thousand of the bond amount. And, Bankers alleges it agreed to accept a rate of $3.00 per thousand for the bond amount in reliance upon LG's representations that they would not use the bond to cover any entries subject to antidumping duties and that they would instead post cash collateral with Customs to cover the entries subject to antidumping and a cash deposit or single entry bond to cover any potential antidumping duties owed. On April 9, 2012, Bankers and LG executed a General Indemnity Agreement ("GIA") in favor of Bankers as a condition to Bankers agreeing to execute the Bond and several riders.[3]

This dispute relates to Bankers receipt of 2,444 notices of suspension from Customs to date suspending the period to liquidate entries entered by LG.[4] The suspension notices provided

---

[3] The first rider named Revnosa Factory and Mexicalli Factory as unincorporated units or trade or business names of the principal with such riders effective on May 28, 2012. The second rider named LG Electronics Monterrey Mexico, S.A.DE C.V. as an unincorporated unit or trade or business name of the principal with such rider effective on June 25, 2012. LG USA and Bankers issued a Reconciliation Bond Rider effective May 28, 2012 wherein LG USA and Bankers agreed that the Bond covers all Reconciliations pursuant to 19 U.S.C. §1484(b) that are elected on any entries secured by the Bond and that when an Aggregate Reconciliation lists entries occurring in more than one bond period, any liabilities in the Aggregate Reconciliation shall be attributed to the Bond during any and all of the bond periods.

[4] It is unclear from the amended complaint when Bankers received the notices of suspension. The allegations state 2,444 notices were received "to date." doc. 10, § 24.

Bankers with the transaction date, entry type, entry number, reference name, importer number, processing date, and port of entry of each entry, but the suspension notices did not inform Bankers of the type of merchandise imported, the country of origin of the merchandise or the manufacturer and/or producer who produced the merchandise at issue in the suspension. These notices also referenced a Customs entry type "3," a notation that indicated that LG imported merchandise subject to antidumping or countervailing duties. Bankers alleges it lacked information on the entries subject to suspension to properly assess the risk on the Bond, and thus, carefully reviewed and documented each suspension notice, incurring significant expense. Bankers requested LG produce copies of the entry documents relating to the suspension notices so that it could fully evaluate the risk on the Bond, but LG refused. As a result, Bankers asserts it was forced to undertake additional underwriting requirements including a demand for LG to pay additional premium due to having used the Bond to cover entries subject to antidumping duties, and demanded LG post a letter of credit in Bankers' favor in the amount of $4,400,000.00, and to remit payment of fees and expenses Bankers incurred in reviewing the suspension and related notices.

On November 29, 2012, Bankers terminated the Bond effective January 15, 2013.[5] On January 4, 2013, Bankers filed this action seeking to recover against LG on the theory of breach of contract (Count I) and specific performance (Count II). Bankers amended its complaint on March 18, 2013, adding claims for common law fraud (Count III), negligent misrepresentation (Count IV), and unjust enrichment (Count V). *See* doc. 16. In Count I, for breach of contract,

---

[5] Once a bond is terminated, no new Customs transactions may be charged against the bond. See 19 C.F.R. §113.27(c).

Bankers alleges LG breached the Bond by using it to cover entries subject to significant potential antidumping duties and demands that LG remit payment of the additional premium and other fees and expenses for LG's use of the Bond to cover such entries. Bankers also claims LG breached the terms of the GIA by refusing to pay additional premium to Bankers for using the Bond to cover significant potential antidumping duties and by refusing to pay fees and expenses Bankers incurred and continues to incur as a result of having to review and investigate entries subject to significant antidumping duties. By Counts III and IV, for common law fraud and negligent misrepresentation respectively, Bankers alleges LG misrepresented material facts that the Bond would not be used for entries subject to antidumping duties. And, Count V, for unjust enrichment, alleges LG has been unjustly enriched by obtaining a Bond at a rate of $3 per thousand that should have issued at a rate of $25 per thousand. LG moves to dismiss all counts in the amended complaint.

*C. Standard of review*

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all facts alleged in the pleadings as true and interprets these facts in favor of the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). The Federal Rules of Civil Procedure generally do not require a plaintiff to set out in detail the facts upon which he bases his claim. Instead, all that ordinarily is required is that the claimant set forth a "short and plain statement of his claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957); Fed.R.Civ.P. 8(a)(2). Hence, while a plaintiff attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

factual allegations, he is obliged to provide the "grounds" of his "entitlement to relief," more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise [the claimant's] right to relief above the speculative label on the assumption that all of the complaint's allegations are true." *Id.* (citations omitted).

Three of Bankers' five counts sound in fraud. Consequently, Bankers must meet Rule 9(b)'s heightened pleading standard: "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Thus, Bankers must allege facts as to the time, place, and substance of LG's alleged fraud, the details of LG's allegedly fraudulent acts, when they occurred and who engaged in them. *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005); *Brooks v. Blue Cross Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997).

### D. Discussion

#### 1. Count I

To survive a motion to dismiss, a breach of contract claim under Florida law must allege: 1) the existence of a contract, 2) a breach of the contract, and damages resulting from the breach. *Drilling Consultants, Inc. v. First Montauk Securities Corp.,* 806 F.Supp. 2d 1228 (M.D. Fla. 2011). In Count I, for breach of contract, Bankers alleges two duties breached by LG. First, Bankers alleges that "Defendants materially breached the terms of the GIA by refusing to pay additional premium to Bankers for using the Bond to cover significant potential antidumping duties." Amended Complaint, ¶ 36. Second, Bankers alleges that "Defendant also materially breached the terms of the GIA by refusing to pay fees and expenses Bankers incurred and

continues to incur as a result of having to review and investigate entries subject to significant potential antidumping duties." Amended Complaint, ¶ 37. Upon a thorough review, these contractual duties are not included in the GIA. *See* GIA, Exhibit A to Motion to Dismiss, doc. 16-1.[6] Vague allegations of unidentifiable duties in a breach of contract claim are insufficient to satisfy Rule 12(b)(6). More simply, Count I fails to properly allege a breach of the GIA.

LG posits that the suspension notices Bankers received do not show or imply that LG used the Bond to cover antidumping duties. It is undisputed that as statutorily required, Customs sent notices of suspension "to the importer of record ... and to any ... surety of such importer." *See* 19 U.S.C. §1504(c); *see also* 19 C.F.R. §159.12(c). The notices merely advised Bankers, LG's surety, of the suspension, but did not indicate that LG had *used* the Bond to secure payment of antidumping duties on the suspended entries. Hence, according to LG, Bankers has failed to allege a use of the Bond that would have required LG to pay and Bankers to charge an antidumping premium or to demand reimbursement for other charges Bankers incurred. Moreover, LG posits that exposure to the hazard of possible future claims on the Bond does not amount to a breach of contract, and Count I fails for this reason.

Until *Twombly*, courts routinely followed the rule that, a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief. *Twombly, supra,* 550 U.S. at 555 citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). However, under *Twombly*,

---

[6] Even though it is not attached to the complaint, this Court may consider the GIA in deciding the motion to dismiss without converting the motion to a motion for summary judgment because the GIA is central to Bankers' claims and its authenticity is not disputed. *See SFM Holdings, Ltd. v. Banc of America Sec., LLC,* 600 F.3d 1337 (11th Cir. 2010); *Day v. Taylor,* 400 F.3d 1272, 1276 (11th Cir. 2005).

to survive a motion to dismiss, a complaint must now contain factual allegations which are enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. As in *Twombly,* I find that Bankers has "not nudged its breach of contract claim across the line from conceivable to plausible" for the reasons LG argues. *Id.* at 570. Accordingly, I recommend Count I be dismissed.

2.  *Counts III- common law fraud*

In Count III, Bankers alleges that LG made misrepresentations of material facts to Bankers in soliciting issuance of the Bond and continued to make misrepresentations throughout the period of time that the Bond was in existence. Bankers alleges that LG misrepresented that the Bond would not be used for entries subject to antidumping duties, that LG knew that their misrepresentations were false at the time the statements were made, and that LG intended to induce Bankers to act on the misrepresentations. Bankers alleges that LG knew, and had been repeatedly told by Bankers, that the rate for entries subject to antidumping duties would be $25.00 per thousand of the Bond amount, and that through their misrepresentations, LG intended to induce Bankers to issue a Bond with a rate of $3.00 per thousand of the Bond amount, and therefore save hundreds of thousands of dollars in premium amount that would be due to Bankers. Bankers further alleges that it justifiably relied on the false misrepresentations and has suffered damages as a direct and proximate result of LG's misrepresentations. Amended

8

Complaint, ¶¶48-51.

LG asserts that Count III fails to state the circumstances constituting fraud with the particularity required by Rule 9(b). Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." To satisfy the Rule 9(b) standard, the complaint must set forth (1) the exact statements or omissions made; (2) the time and place of each such statement and who made the statement or omission; (3) the substance of the statement and how it misled the plaintiff and (4) the defendant's gain due to the alleged fraud. *Brooks v. Blue Cross and Blue Shield of Florida, Inc.,* 116 F.3d 1364, 1371 (11th Cir. 1997). Of course, Rule 9(b)'s application should not vitiate the overall concept of notice pleading. *See Ziemba v. Cascade Int'l, Inc.,* 256 F.3d 1194, 1202 (11th Cir. 2001). All that Bankers alleged is set forth above, and Bankers has failed to set forth what false statements were made and by whom, how, when, and where.[7] *See Iqbal, supra,* at 678 ("pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation" ... "a formulaic recitation of the elements of a cause of action will not do."). Accordingly, I recommend Count III be dismissed.[8]

### 4. *Count IV- negligent misrepresentation*

In Florida, an action for negligent misrepresentation sounds in fraud rather than in

---

[7] Count III incorporates paragraphs 1-29 of the amended complaint, but the general allegations do not include any more information or details about the alleged fraud.

[8] In the motion to dismiss, LG argues that the fraud claim does not state a tort that is independent of the breaches of contract claims. The fraud claim, however arises from statements LG made to Bankers when soliciting issuance of the Bond. The breach of contract claim necessarily arises from actions or non-actions during the contractual period, not prior to it. Hence, a separate tort is alleged.

negligence. *Souran v. Travelers Ins. Co.*, 982 F.2d 1497, 1511 (11th Cir. 1993). Hence, Rule 9(b)'s pleading requirements apply. *Posen Const. v. Lee County,* 921 F.Supp 2d 1350, 1361 (M.D. Fla. 2013). Accordingly the standard is satisfied when a claim for negligent misrepresentation includes (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud. *Ziemba, supra,* 256 Fed.3d at 1202.

As in Count III, Count IV alleges in a cursory fashion that LG made misrepresentations of material facts to Bankers in soliciting issuance of the Bond. *See* Amended Complaint, ¶¶ 53-56. Though Bankers incorporated the general allegations set forth in paragraphs 1-19 of the Amended Complaint, I find the allegations as a whole insufficient to satisfy the demands of Rule 9(b) described above. The allegations fail to set forth with requisite particularity as to person, time, place, and manner. As such, I recommend Count IV be dismissed without prejudice.

5. *Count V- unjust enrichment*

"The elements of an unjust enrichment claim are a benefit conferred upon a defendant by the plaintiff, the defendant's appreciation of the benefit, and the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof." *Fuller v. Mortgage Electronic Registration Systems, Inc,* 888 F.Supp. 2d 1257, 1275 (M.D. Fla. 2012) quoting *Fla Power Corp. v. City of Winter Park,* 887 So. 2d 1237, 1242 n.4 (Fla. 2004). In principle, liability in unjust enrichment is unrelated to fault. A typical unjust enrichment cause of action stems from a mistaken transfer. *Guyana Tel & Tel. Co.,*

*Ltd. v. Melbourne Intern. Comm., Ltd.,* 329 F.3d 1241 n.3 (11th Cir. 2003). A claim for unjust enrichment should be premised upon circumstances under which it would be inequitable for the defendant to retain the benefit without payment for it. *Id.* Hence, when a plaintiff predicates an unjust enrichment claim upon wrongful conduct of a defendant, the plaintiff's right of recovery arises not from unjust enrichment, but rather from the underlying tort. *Id.; Traditions Senior Management, Inc. v. United Health Adm'rs, Inc.*, 2013 WL 3285419 (M.D. Fla. June 27, 2013) (finding plaintiff's right to recovery rests in a contract or tort claim, not unjust enrichment where unjust enrichment allegations were predicated on wrongful conduct of defendants); *AstroTel, Inc. v. Verizon Florida, LLC*, 2012 WL 1581596, *10-12 (M.D. Fla. May 4, 2012) (same) citing *Flint v. ARB, Inc.,* 337 F.3d 1326, 1330 n.2 (11th Cir. 2003).

In Count V, Bankers alleges that LG falsely represented that they would not use the Bond to cover any entries subject to antidumping duties, that LG made the representation in an effort to induce Bankers to issue a bond at a rate substantially lower than the rate for entries subject to antidumping duties, and that by obtaining the Bond at a substantially lower rate and using it to cover numerous entries subject to antidumping duties, LG has been unjustly enriched. Bankers premised its allegations of unjust enrichment upon a wrongful act or acts of LG. The law of unjust enrichment is derived solely from enrichments that are unjust independent from alleged wrongs. *See Flint, supra* ("... the law of unjust enrichment is concerned solely with enrichments that are unjust independently of wrongs and contracts ... when the plaintiff relies on a wrong to supply the 'unjust factor,' the causative event is a wrongful enrichment rather than an unjust enrichment"). As such, I recommend that Bankers' claim for unjust enrichment, premised on LG's wrongful false representations, be dismissed pursuant to Rule 12(b)(6).

*E. Conclusion*

A Rule 12(b)(6) dismissal may give rise to a dismissal without prejudice, providing the plaintiff with the opportunity to overcome the pleading deficiencies cited. However, a district court need not allow an amendment where amendment would be futile. *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) *citing Forman v. Davis,* 371 U.S. 178, 182 (1962). *See e.g. Butler v. Sheriff of Palm Beach County,* 685 F.3d 1261, 1265 (11th Cir. 2012) (affirming dismissal with prejudice of amended complaint where district concluded that "any further attempts to amend would be futile"); *Sibley v. Lando*, 437 F.3d 1067 (11th Cir. 2005) (affirming dismissal of complaint and finding district court did not abuse its discretion in declining to permit Sibley to amend complaint because amendment would be futile); *Corsello v. Lincare, Inc,* 428 F.3d 1008 (11th Cir. 2005) (same). This is not Bankers' first attempt to state causes of action; it has already amended its complaint. A court is not required to grant leave to amend *sua sponte* when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court. *Wagner v. Daewoo Heavy Ind. America Corp.,* 314 F.3d 541 (11th Cir. 2002). Bankers has not made such a request, but even if it did, it is difficult to imagine that any amendment, given the current circumstances, would state a cause of action. In short, amendment would be futile. For the reasons set forth above, it is hereby

RECOMMENDED:

1. LG's motion to dismiss first amended complaint (doc. 16) be GRANTED with

prejudice as to Counts I, III, IV, and V.

REPORTED at Tampa, Florida on October 25, 2013.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

**<u>NOTICE TO PARTIES</u>**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. § 636(b)(1).